| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF WASHINGTON | TENTH JUDICIAL DISTRICT |

Matthew J. Nordby,

    Plaintiff

v.

Shane Company, Inc., d/b/a Western Stone and Metal Corp.,

    Defendant.

Case No.:
Case Type: 7 (Employment)

SUMMONS

THIS SUMMONS IS DIRECTED TO: THE ABOVE-NAMED DEFENDANT:

    1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

Schaefer Law Firm, LLC

400 South Fourth Street

Suite 202

Minneapolis, MN 555415.

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

1

Exhibit A

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

_____  _____
Plaintiff's attorney's signature                Dated

Nov 21, 2011

SCHAEFER LAW FIRM, LLC

_____
Lawrence P. Schaeffer (#195583)
Andrea F. Rubenstein (#94055)
400 South Fourth Street
Suite 202
Minneapolis, MN 55415
Tel. 612-294-2603

Attorneys for Plaintiff

2

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF WASHINGTON | TENTH JUDICIAL DISTRICT |

| | |
|---|---|
| Matthew J. Nordby,<br><br>    Plaintiff | Case No.:<br>Case Type: 7 (Employment) |
| v. | COMPLAINT |
| Shane Company, Inc., d/b/a Western Stone and Metal Corp.,<br><br>    Defendant. | |

Plaintiff Matthew J. Nordby, for his Complaint against defendant, Shane Company, Inc., states and alleges as follows:

## I. INTRODUCTION

1. Plaintiff Matthew Nordby is a former employee of the defendant. After working at the Shane Company for nearly seven and a half years, he was discharged because he had developed a serious health condition and had consequently given notice that he might be in need of Family and Medical Leave Act leave. He brings this action to seek redress for the defendant's violations of the Family and Medical Leave Act, 29 U.S.C. Section 2601 *et seq.*

## II. PARTIES

2. Plaintiff Matthew Nordby was formerly employed by the defendant from January 27, 2003, to June 29, 2010. He is a citizen of the State of Minnesota residing in Savage, Minnesota. During all relevant times, he was an "eligible employee" of the defendant within the meaning of 29 U.S.C. §2611 (2).

3. Defendant Shane Company, Inc., is a Colorado corporation doing business in Minnesota. It is registered in Minnesota as "Shane Co. Diamonds Rubies Sapphires Pearls."

1

Defendant is a privately owned jeweler and operates numerous retail stores throughout the country, including two in Minnesota, selling diamond rings and other jewelry. On information and belief, at all relevant times hereto, Shane Company was engaged in interstate commerce, had fifty or more employees, and employed Mr. Nordby. Consequently, defendant was an "employer" of the plaintiff within the meaning of 29 U.S.C. §2611 (4)(A).

### III.   JURISDICTION AND VENUE

4. This Court has jurisdiction over the parties and the causes of action alleged by plaintiff because the events alleged herein affecting the plaintiff occurred in the State of Minnesota.

5. Venue in this Court is proper in that the defendant conducts part of its business in Washington County, Minnesota; one of the defendant's retail stores is located in Washington County. Furthermore, at the time he was discharged, Mr. Nordby's employment with defendant occurred in Washington County.

### IV.   FACTUAL ALLEGATIONS

6. Mr. Nordby was initially hired as a Market Manager for the defendant in January of 2003. He came with excellent credentials, including a degree in Marketing Management and thirteen years of experience in the retail industry as well as an already successful career in regional retail management.

7. In 2005, he was promoted to the position of Regional Director, having had performed admirably. His new job included supervising a number of retail stores and involved a significant amount of travel. Although he never received a performance review, he did receive annual raises and numerous acknowledgements of his fine work and work ethic.

2

8. In 2009, he became ill with depression, serious enough to require a six week medical leave of absence. He was granted that leave and returned to work during early summer, 2009. Although he had been granted the leave, his working climate changed when he returned. For the first time, ever, he received a warning about his performance. The warning, however, was highly subjective and vague. Russ Barton, the Vice President of Operations and his then supervisor informed him only that he was "not himself." He was advised to change the perception, despite the impossibility of changing someone else's perception.

9. In February of 2010, he was demoted for no known reason other than his inability to change the "perception" of his supervisor. Barton gave him no particular reason but suggested that it was "for his own good" and that it was better for him not to travel so much. His new position was as Store Manager of the defendant's Woodbury, Minnesota, store, one of the stores for which he had previously been responsible in his higher level roles as Market Manager and Regional Director.

10. The assistant manager of the Woodbury store was Kelly Swentik. From the beginning of his tenure at the store, she made it clear that she was disappointed that she had not been interviewed for the position because she had wanted to become the Store Manager. She was quite unhappy that he had been selected instead of her. This unhappiness tainted her working relationship with the plaintiff, through no fault of his own.

11. Despite his own disappointment and disagreement with this adverse treatment, the plaintiff accepted the demotion and proceeded to perform well. As was the case while he was Regional Director, he earned the respect and admiration of most of his subordinates and management. For instance, immediately before the events leading to his termination, he had received praise for his outstanding performance because his store had outperformed the

defendant's other Minnesota store. Vice President Russ Barton had called him at the end of May, 2010, to congratulate him on his good work and Tom Shane, the owner of the company, sent him an email around the same time to tell him he was doing a spectacular job in his new position as store manager.

12.  During the spring of 2010, the plaintiff had the misfortune of developing still another serious medical condition. He suffered greatly from chronic and severe abdominal pain, sometimes so severe that he had to miss a day of work here and there or, more often, chose to come to work despite his pain and illness. His physicians had difficulty in diagnosing it, and he underwent a battery of tests and medical appointments as they tried to determine what was causing his symptoms. Such tests and appointments also caused him to miss work from time to time. Generally, however, as to such medical appointments, he scheduled them outside of work time whenever possible and managed to miss as little work as possible. The accrued sick leave to which he was entitled amply covered these absences.

13.  By June of 2010, the condition was not improving and his physicians were still unable to find an effective treatment. On or about June 5, 2010, he had to leave work because severe pain again was interfering with his ability to function. The next day, he was back in his physician's office. Two days later, he returned to work, although his condition had not yet been diagnosed and he continued to suffer from its symptoms.

14.  On or about June 22, 2010, he underwent another battery of tests. That same day, because his condition continued to remain undiagnosed and hence untreatable, he called Vice President of Operations, Russ Barton, to let him know that it might be necessary to request leave under the Family and Medical Leave Act to get to the bottom of his medical condition. He also

called his assistant manager in the Woodbury store to alert her, as well, that he had a medical appointment and therefore might be late to work.

15. He never had an opportunity to begin any formal FMLA leave process. Although attacks of severe symptoms required trips to urgent care three times during the month of June, 2010, he continued to use his accrued sick leave for the necessary time off. He had duly reported these occurrences to management.

16. On June 24, 2010, he called Ron Robbins, Director of Sales Development and his then direct supervisor. He reported that he was again ill and gave him similar notice to that which he had given Russ Barton: that he might need to request intermittent FMLA leave to provide more ample time for his doctor to diagnose and treat his condition in a more comprehensive fashion.

17. On June 29, 2010, less than one week after his notice to his supervisor that he was contemplating requesting leave under the FMLA, he was fired; on information and belief, the decision to terminate his employment was made virtually immediately: just one day or less after his call to Ron Robbins.

18. Russ Baron, along with Deb Searles, a director of Human Resources, called the plaintiff to a meeting June 29, 2010. At the meeting, they informed him that he was being discharged. Russ Barton offered a totally false reason for this action, stating that the plaintiff had failed to complete an inventory on time. In fact, it could be easily demonstrated that he had completed it on time. Deb Searles merely said to him, "I hope you get better."

19. After his termination from employment, the plaintiff requested and eventually received a copy of his personnel file in accord with Section 181.961 of the Minnesota Statutes. He discovered that the file was full of secret notes and memoranda submitted in the last three

weeks of his employment replete with complaints and references to his illness and absences – and with speculation as to the cause. Although the earliest entry describes an incident on May 29, 2010, said entry was not actually written until June 10. Every such entry was made after the plaintiff had given notice of the possibility of taking FMLA leave. In all, about fifty pages of such documents had been placed in his file in the three weeks or so before his discharge. In addition, although as a manager, himself, he had been required by company rules or policy to show his employees any disciplinary or performance warnings or memoranda and further required their written signatures acknowledging receipt of same, not one of this slew of documents placed in his file had his signature or in some cases any signature at all. He in fact had not been shown or even had heard about any of these alleged complaints or "recommendations for counseling".

20.  Mr. Nordby's separation notice described the reason for his discharge as "poor performance." A memorandum placed in his file on the day of his discharge documents the sick time had had taken and accounts for his termination by stating, "this pattern of usage has caused the management team and store personnel to question his leadership." It listed his purported failings, the vast majority of which were references either to his use of sick time or the manifestations of his illness.

V.   COUNT I

(Interference with Exercise of Rights under the Family and Medical Leave Act)

21.  Plaintiff realleges the above allegations as if hereinafter set forth in full.

22.  The Family and Medical Leave Act ("FMLA") provides in part that eligible employees are entitled to take up to twelve weeks of leave in any twelve month period if they have a serious health condition. 29 U.S.C. §2612 (a)(1)(D). Upon return from such a leave, the

6

employee is entitled to be restored to a position the same as or equivalent to the position that the employee held when the leave commenced. 29 U.S.C. §2614 (a). Employers are required to notify employees of their rights and obligations under the Act. 29 C.F.R. §§825.300, 825.301. Employers are prohibited from using the taking of FMLA-eligible leave as a negative factor in employment decisions. 29 C.F.R. §825.220 (c).

23. The plaintiff was an "eligible employee" within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, in that he was employed by the defendant for more than one year and, as defendant's employee, he worked more than 1,250 hours in the year preceding his discharge.

24. Plaintiff's condition at the time of his discharge was a chronic and "serious health condition," within the meaning of the FMLA, 29 U.S.C. § 2611, *et seq*. Plaintiff required continuing treatment by a health care provider and his condition was so serious that, if not treated, it would likely result in, and had in fact resulted in, a periods of incapacity of more than three calendar days.

25. The FMLA further provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under Title I of the FMLA. 29 U.S.C. §2615 (a)(1).

26. The defendant willfully and in bad faith interfered with, restrained, and denied plaintiff's exercise of his rights to FMLA leave by failing to give him sufficient opportunity in accord with the Act to apply for such leave, by failing to inquire or seek verification as to whether his absences qualified for FMLA leave, and by terminating his employment upon his notice that he had or might have need for FMLA leave.

27. The defendant further willfully interfered with, restrained and denied plaintiff's exercise of his rights under the FMLA by illegally charging him with undue absences that were medically necessary and qualified for such leave and because his termination was prompted by the fact that he had taken sick leave to which he was entitled under the statute.

28. The unlawful employment practices set forth above were committed with malice or reckless indifference to Plaintiff's federally protected rights in violation of the FMLA, 29 U.S.C. § 2611, *et seq.*

29. As a direct and proximate result of defendant's actions against the plaintiff, he has lost salary, fringe benefits, and he has incurred other damages, all in excess of $50,000, and he is entitled to liquidated damages and other relief permitted by the Act.

## VI.   COUNT TWO

### (Retaliation in Violation of the Family and Medical Leave Act)

30. Plaintiff realleges the above allegations as if hereinafter set forth in full.

31. Defendant's actions also constitute retaliation in violation of the FMLA, 29 U.S.C. §2615.

32. As a direct and proximate result of defendant's actions against the plaintiff, he has lost salary, fringe benefits, and he has incurred other damages, all in excess of $50,000, and he is entitled to liquidated damages and other relief permitted by the Act.

## VII.   RELIEF

WHEREFORE, Plaintiff requests judgment of this Court against the defendant as follows:

a. Granting a permanent injunction enjoining the defendant from engaging in any employment practice that violates the Family and Medical Leave Act;

  b. Awarding to the plaintiff all relief available under the FMLA, including lost wages, benefits and other compensation, together with interest thereon, pursuant to 29 U.S.C. §2617(a)(1)(A)(ii); liquidated damages, pursuant to 29 U.S.C. §2617(a)(1)(A)(iii); reinstatement or front pay pursuant to 29 U.S.C. §2617(a)(1)(B); and attorney's fees and costs of this action pursuant to 29 U.S.C. §2617(a)(3);

  c. Reinstating the plaintiff to his former position or to an equivalent position; and

  d. Granting such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action for all claims so triable.

Dated: November 21, 2011    SCHAEFER LAW FIRM, LLC

*/s/ Andrea J. Rubenstein*
Lawrence P. Schaefer (#195583)
Andrea F. Rubenstein (#94055)
400 South Fourth Street, Suite 202
Minneapolis, MN 55415
Tel. 612-294-2603

**ATTORNEYS FOR PLAINTIFF**

9

## ACKNOWLEDGMENT

The undersigned acknowledges that pursuant to Minn. Stat. § 549.211, subd. 2, that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated   11-21-11   .                            By: *Andrea F. Rubenstein*

#4061

10